JUDGE SANDRA CABRINA JENKINS
*698 This matter involves the involuntary termination of parental rights. The State of Louisiana through the Department of Children and Family Services ("DCFS") filed a petition for the termination of parental rights of the mother, A.A., as to her minor child, J.N.[1] [2] After a hearing, the trial court determined that DCFS proved by clear and convincing evidence one of the statutory grounds for termination and that termination of the mother's parental rights was in the best interests of J.N. J.N. now appeals the trial court's judgment terminating the mother's parental rights. For the reasons that follow, we find no manifest error in the trial court's judgment, and we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On January 27, 2016, DCFS initiated an investigation into a report of alleged physical abuse of J.N., a fourteen-year old minor child, by the child's father. In the course of the investigation, DCFS learned that the father had sole physical custody of J.N. and that the mother, A.A., had not exercised physical care or custody of J.N. for approximately three years due to mental health issues that compromised her ability to supervise her child. Regarding the alleged physical abuse, DCFS found no information to substantiate the allegation; both J.N. and the father denied any physical abuse. Prior to closing the investigation, however, DCFS learned that the father passed away, on February 13, 2016, leaving J.N. without a legal caretaker. DCFS then learned that J.N. was residing with the maternal grandmother and was exhibiting defiant, uncontrollable behavior. Based on all the information gathered in the course of the investigation, DCFS filed a request with the trial court for an instanter order, which was granted on March 16, 2016, placing J.N. in the temporary custody of DCFS.[3]
On March 30, 2016, DCFS filed a petition to have J.N. declared a child in need of care. On May 11, 2016, the trial court held an adjudication hearing on the petition; J.N. and his mother were present and represented by counsel at the hearing. At the conclusion of the hearing, the trial *699 court rendered judgment adjudicating J.N. a child in need of care and ordering that J.N. remain in the custody of DCFS, pending further orders of the court, under the specified terms and conditions set forth in an approved case plan. In addition, the trial court approved a case plan for A.A. to regain custody of J.N. and advised A.A. of the case plan, case review, and permanency review procedures and compliance requirements.
On December 7, 2016, the trial court held a case review hearing, at which A.A. and J.N. were both present and represented by counsel. After consideration of the case report submitted by DCFS, regarding the progress made by A.A. and the reasonable efforts made by DCFS to achieve reunification, the trial court rendered judgment approving the permanent case plan of adoption recommended by DCFS as being the most likely means to achieve permanency and stability for J.N. and in the child's best interests.
On March 28, 2017, DCFS filed a petition to terminate the parental rights of A.A. and to declare J.N. eligible for adoption. As the grounds for termination under La. Ch.C. art. 1015(5), DCFS alleged that A.A. abandoned J.N. by leaving the child under circumstances demonstrating an intention to permanently avoid parental responsibility by failing to provide significant contributions to the child's care and support for more than six consecutive months. In addition, pursuant to La. Ch. C. art. 1015(6), DCFS alleged that A.A. failed to substantially comply with the required program of treatment and rehabilitation services under the case plan; failed to maintain a stable and safe home; failed to successfully attend, participate, and complete a mental health evaluation and follow through with any recommended treatment plan; and failed to make any of the parental contributions. Finally, DCFS alleged that, despite attempts at intervention, there was no reasonable expectation of significant improvement in A.A.'s conduct in the near future, considering J.N.'s age and need for a stable and permanent home.
On July 26, 2017, the trial court held a hearing on the termination of parental rights, at which J.N. and A.A. were present and represented by counsel. After considering the evidence and testimony presented, the trial court rendered judgment terminating the parental rights of A.A. and declaring J.N. free and eligible for adoption.
J.N. now appeals the trial court's August 11, 2017 judgment terminating A.A.'s parental rights.
LAW AND DISCUSSION
It is well-settled that a trial court's findings on factually-intense termination of parental rights issues are reviewed on appeal under a manifest error standard of review. State in the Interest of T.M.P. , 13-1006, p. 21 (La. App. 4 Cir. 10/23/13), 126 So.3d 741, 753-54. Further, in any case regarding the involuntary termination of parental rights, the courts must balance the often competing interests of the natural parent and the child. State in the Interest of C.A.C. , 11-1315, p. 7 (La. App. 4 Cir. 2/1/12), 85 So.3d 142, 146 (citing State ex rel. SNW v. Mitchell , 01-2128, p. 8 (La. 11/28/01), 800 So.2d 809, 814-15 ). Parents have a natural, fundamental liberty interest to the continuing care, custody, and management of their children that warrants great deference and protection under the law. State in the Interest of D.W. , 15-0760, p. 9 (La. App. 4 Cir. 12/2/15), 182 So.3d 281, 287 (quoting State ex rel. K.G. , 02-2886, p. 4 (La. 3/18/03), 841 So.2d 759, 762 ). However, "[t]he child has an interest in terminating parental rights that preclude or delay adoption and inhibit *700 establishing stable, long-term family relationships." C.A.C. , 11-1315, p. 7, 85 So.3d at 146. "In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent." K.G. , 02-2886, p. 5, 841 So.2d at 762.
Title X of the Children's Code governs the involuntary termination of parental rights and the certification of children for adoption. As stated within La. Ch. C. art. 1001, the purpose of involuntary termination proceedings is "to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption." Recognizing that the termination of parental rights is a severe and permanent action, the Louisiana Legislature imposed strict procedural and evidentiary requirements to be met before a judgment of termination can be rendered. C.A.C. , 11-1315, p. 8, 85 So.3d at 146. The termination procedure requires the State to prove the elements of at least one the statutory grounds for termination of parental rights, set forth in La. Ch. C. art. 1015, by clear and convincing evidence. K.G. , 02-2886, p. 5, 841 So.2d at 762-63 ; See La. Ch. C. 1035. The State need only establish one of the enumerated grounds for termination. Once the State meets its evidentiary burden, the trial court must also determine that termination of the parental rights is in the best interest of the child. K.G. , 02-2886, p. 5, 841 So.2d at 762-63 ; see La. Ch. C. art. 1037.
In this case, DCFS alleged grounds for the termination of A.A.'s parental rights under La. Ch.C. art. 1015(5) and (6), which provide in pertinent part as follows:
(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
In the first assignment of error, J.N. argues that the trial court erred in determining that DCFS satisfied its burden of proving by clear and convincing evidence the elements of the grounds for termination under either La. Ch. C. art. 1015(5) or (6), as alleged in the petition. Specifically, J.N. asserts that DCFS failed to prove that A.A. had not substantially complied with her case plan and that A.A. had no reasonable expectation of significant improvement in her mental health condition in the near future. Based on our review of *701 the record, we find no manifest error in the trial court's determination that DCFS established one of the statutory grounds for termination by clear and convincing evidence.
Lack of parental compliance with a case plan may be evidenced by one or more of the following, under La. Ch. C. art. 1036(C), pertaining to proof of parental misconduct:
(1) The parent's failure to attend court-approved scheduled visitations with the child.
(2) The parent's failure to communicate with the child.
(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
In addition, La. Ch. C. art. 1036(D) provides, in pertinent part, that the lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by "[a]ny physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior."
Our review of the record reflects that at the time J.N. was placed in the custody of DCFS, on March 16, 2016, the mother, A.A., had not exercised physical care or custody of J.N. for the previous three years due to her mental illness, which the record indicates as schizophrenia and bipolar disorder. Thereafter, following a hearing on May 11, 2016, the trial court adjudicated J.N. a child in need of care and approved a case plan developed by DCFS for A.A. to regain custody of J.N. The terms of the case plan included: maintaining contact with DCFS by phone or in person; reporting all changes regarding contact information within 48 hours of the change; supporting her child while in foster care by paying $25.00 in parental contributions; maintaining safe and stable housing with adequate space for her child; submitting to an assessment by the Office for Addictive Disorders (OAD) and following all recommendations; and submitting to random drug screening as requested by DCFS. In addition, the case plan advised that A.A. "needs to be compliant with her mental health diagnosis and medication management in order to focus on the needs of the children." As reflected by the May 17, 2016 judgment, the trial court advised A.A. of the case plan, case review, and permanency review procedures; advised her of the obligations to cooperate with DCFS and comply with the requirements of the plan; and cautioned her that her failure to comply could result in the filing of a petition to terminate her parental rights.
At a case review hearing on December 7, 2016, DCFS submitted a progress report on the case plan to the trial court. The report states that A.A. had not made any contact with DCFS and had not begun any components of her case plan. In addition, *702 the report indicates that A.A. did not attend a scheduled psychological appointment. Notably, the report also states that A.A. had not attended any of the weekly scheduled visitations with J.N., and indicates no contact between A.A. and J.N.
At the termination hearing on July 26, 2017, Shantrel Jones, the assigned DCFS case manager, provided testimony supporting the grounds alleged for termination. Regarding the terms of A.A.'s case plan, Ms. Jones testified that A.A. had not made any financial contributions to J.N.'s care during the entire period J.N. had been in the custody of DCFS. Ms. Jones acknowledged that A.A. had signed a consent to release information form to allow DCFS to obtain treatment information; however, she stated that the information received by DCFS indicated A.A. had not followed through with any recommended counseling or mental health treatment. Ms. Jones also testified that A.A. was referred to a parenting education program that she did not attend. In regards to whether A.A. had safe and stable housing, Ms. Jones stated that A.A. had maintained housing during the entire period of this case; however, A.A. had never permitted a DCFS case worker to enter her home; consequently, DCFS had not been able to determine the conditions of the home environment. In addition, Ms. Jones stated that A.A. did not maintain any contact with DCFS and did not provide a phone number. Regarding visitation and contact between A.A. and J.N., Ms. Jones testified that A.A. had visited with J.N. in court and reportedly had seen J.N. at the grandmother's house, where J.N. was allowed to visit regularly; however, A.A. did not attend any scheduled weekly visitations with J.N. Finally, according to all the information obtained by DCFS in this case, Ms. Jones testified that there was no indication A.A. had made any progress to achieving mental health stability.
A.A. also testified at the termination hearing. She acknowledged reviewing a case plan with a DCFS case manager and asserted that she had complied with all of it; but, she stated that DCFS kept "changing their story" and "everything I hear from someone in this courtroom is a lie." As her testimony continued, A.A. made several incoherent statements about chemicals being brought into her house, "being used as lab rats," and grease coming out of her skin. The trial court then addressed A.A. and asked whether she was taking her proper medications; her response indicates that she was not taking medication, as she stated that the medication is full of insect hormone meant to poison her.
Following testimony and arguments, the trial court noted that many hearings had taken place over the period that J.N. had been in DCFS custody and that the case plan was repeatedly discussed and reviewed with A.A.[4] The trial court then found that, based on the record and testimony presented, DCFS had proved that A.A. failed to substantially comply with her case plan and mental health treatment. The trial court also determined it was in the best interest of J.N. that A.A.'s parental rights be terminated and to allow J.N. to be free for potential adoption.
A review of the record and the testimony reflects that the elements of the grounds for termination of parental rights under La. Ch. C. art. 1015(6) were proven by clear and convincing evidence. First, the record reflects that J.N. had been in *703 DCFS custody for more than one year, pursuant to the instanter order issued on March 16, 2016. Further, the record reveals that A.A. failed to make any financial contributions to J.N.'s care;[5] A.A. failed to maintain contact with DCFS or even provide a phone number; A.A. failed to attend scheduled visitations and other recommended programs and appointments; and, by her own admission and testimony, A.A. refused to follow recommended mental health treatment, to ensure that she can provide a safe, stable home and adequate care for J.N. Finally, the record of the case, particularly A.A.'s testimony, clearly reveals an established pattern of non-compliance and mental illness demonstrating there is no reasonable expectation of improvement in A.A.'s condition or conduct. Consequently, we find no manifest error in the trial court's determination that DCFS proved by clear and convincing evidence the grounds for terminating A.A.'s parental rights. Accordingly, we find no merit to the first assignment of error.
In the second and final assignment of error, J.N. argues that the trial court erred in determining that termination of the mother's parental rights was in J.N.'s best interest. As discussed previously, the termination of parental rights involves a two-pronged inquiry. "[A]fter the ground for termination is found, the trial court must determine whether the termination is in the child's best interests." C.A.C. , 11-1315, p. 8, 85 So.3d at 147 (citing La. Ch. C. art. 1039 ; State ex rel. L.B. v. G.B.B. , 02-1715, pp. 5-6 (La. 12/4/02), 831 So.2d 918, 922 ).
At the time of the termination proceeding, J.N. was fifteen years old and had been in DCFS custody for sixteen months. The record reflects that J.N. had been in placement at a group home, where it was reported that J.N. was doing well in school, taking proper medication for ADHD (Attention Deficit Hyperactivity Disorder ) and ODD (Oppositional Defiant Disorder ), and making progress in controlling anger and behavioral issues. Ms. Jones testified that over the period of time that J.N. had been in custody, DCFS had determined that termination of A.A.'s parental rights and certification for adoption was in the best interest of J.N., based on A.A.'s mental illness, the fact that the father is deceased, and the inability of the grandmother to provide adequate supervision of J.N. Ms. Jones also testified that, prior to the hearing, she spoke with J.N., whose stated preference was to go home with A.A.; but, if that could not happen, then J.N. stated a preference for adoption. J.N. did not testify at the termination hearing, but J.N.'s counsel argued that J.N. wanted to go home with A.A. and did not want to be adopted.
At the conclusion of the hearing, the trial court stated its familiarity with the case and noted that alternatives to termination had been explored, including placement with the grandmother, who was unable to handle the supervision of J.N. Based on the history of the case and the mother's lack of rehabilitation, the trial court stated that it was in the best interest of J.N. to terminate the mother's parental rights and free J.N. for potential adoption.
Based on our review of the record, and given the need to secure a stable environment for J.N., we find no manifest error in the trial court's determination that termination of A.A.'s parental rights is in the best interest of J.N. Thus, we find no merit to the second assignment of error.
*704 CONCLUSION
For the foregoing reasons, we find no manifest error in the trial court's August 11, 2017 judgment terminating the parental rights of A.A. and declaring J.N. eligible for adoption; and we affirm.
AFFIRMED
LOBRANO, J., CONCURS IN THE RESULT.

We use the initials of the minor child and the parent to protect the minor's identity and ensure the parties' privacy. See Uniform Rules-Courts of Appeal, Rule 5-2.

DCFS filed three separate petitions to terminate the parental rights of A.A. as to each of her three minor children, J.N., A.N., and S.A. Each of the children was appointed counsel to represent his/her interests. The three cases were consolidated for purposes of the hearing on the termination of the mother's parental rights. Following the hearing, the trial court rendered three separate judgments terminating the mother's parental rights as to each child. The August 11, 2017 judgment at issue in this appeal pertains only to the parental rights of A.A. as to J.N., who is the only party to appeal the trial court's termination of the mother's parental rights. This appeal does not discuss the facts or issues related to the termination of A.A.'s parental rights to her other two children, A.N. and S.A. However, the records for each child's case have been lodged in this Court and consolidated with this appeal.

We note that the affidavit in support of the instanter order states further allegations regarding J.N.'s behavior and actions; but, due to the sensitive nature, those allegations will not be discussed herein.

As previously noted, A.A.'s parental rights as to all three of her children were terminated. The trial court presided over all hearings for all three children, from the time each was placed in DCFS custody through the termination proceedings. A.N. was the first placed in the custody of DCFS pursuant to an instanter order, on November 6, 2015.

We note that A.A.'s failure to contribute to J.N.'s support and care also constitutes a sufficient ground for termination of parental rights under La. Ch.C. art. 1015(5), as alleged in the petition.